GREENBERG TRAURIG, LLP
Vincent H. Chieffo (SBN 49069)
*ChieffoV@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone: 310-586-7700
Facsimile: 310-586-7800

Attorneys for Petitioners
Matthias Paul p/k/a Paul van Dyk
znd Paul van Dyk GmbH

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

MATTHIAS PAUL p/k/a PAUL VAN DYK, an individual, and PAUL VAN DYK GmbH, a Company organized under the laws of Germany,

Petitioners,

vs.

ALDA EVENTS, B.V., a Company organized under the laws of the Netherlands,

Respondent.

Case No.: 2:19-cv-04280-SVW-SS

[Hon. Stephen V. Wilson]

**DECLARATION OF NIKLAS CONRAD IN SUPPORT OF PETITIONERS' PETITION TO CONFIRM ARBITRATION AWARD**

*[Filed Concurrently with Notice of Petition and Petition, Declarations of Vincent H. Chieffo and Jasper van Gameren; Proposed Order]*

Date: July 22, 2019
Time: 1:30 p.m.
Courtroom: 10A

Action Filed: January 17, 2019
Date of Removal: May 16, 2019

**DECLARATION OF NIKLAS CONRAD**

I, Niklas Conrad, declare and state:

1. I am an attorney duly admitted to practice law in the Federal Republic of Germany and am a partner in the law firm of Greenberg Traurig Germany, LLP counsel for Petitioners Matthias Paul p/k/a Paul van Dyk and Paul van Dyk GmbH ("Petitioners"). I have personal knowledge of the facts set forth in this Declaration and, if called and sworn as a witness, I could and would testify competently with respect thereto.

2. On September 2, 2018 the Petitioners obtained a final award by arbitrator Jeffrey G. Benz granting them damages against Alda Events B.V. ("Alda") in the amount of $12,588,643.45 (ICDR Case No.: 01-17-0001-3926, the "Award"). On February 14, 2019, we commenced proceedings for the confirmation of the Award in Germany. To this end, we filed (i) an application for the (permanent) recognition and enforcement of the Award in Germany and (ii) we filed, on February 21, 2019, a separate, *ex parte* application for preliminary enforceability of the Award. Both applications were filed with the Higher Regional Court of Hamburg (*Hanseatisches Oberlandesgericht*) (hereinafter "OLG"), as the debtor Alda holds assets in this court district in the form of shares in a German GmbH, a joint venture with the German events company Eventim Live.

3. In light of perceived efforts by Alda to reorganize its business (including, for example, the transfer of important festival activities to other group companies), the second motion, limited to the authorization of *conservatory* measures, served to secure assets for enforcement after the (final) recognition of the Award. By its decision of February 27, 2019, the OLG, in *ex parte* proceedings, granted this application and declared the Award preliminarily enforceable, allowing such conservatory measures to be taken.

4. The decision, handed down by the presiding judge of the competent Chamber, was based on the court's summary conclusion that the Award would be declared enforceable in the main proceedings as well. Assessing the Award in light of Art. 5 of the New York Convention, the OLG *inter alia* reviewed the question of jurisdiction and standing. It found (i) that there had been a valid arbitration clause and that (ii) both

Petitioners were beneficiaries of this clause. In the context of its decision, the OLG also found that the Petitioners had presented plausible and comprehensive arguments to demonstrate a need for preliminary, conservatory measures to protect final enforcement of the Award in Germany. To my knowledge, Alda, so far, has not undertaken any measures to challenge this decision.

5.     Following the OLG's decision, we applied for conservatory attachments of the shares in the GmbH, of related claims of Alda against the GmbH, and of claims against Alda's German joint venture partner. These conservatory attachments were granted by the competent Hamburg District Court, and subsequently executed by court bailiffs in Cologne and Bremen, at the address of the respective debtors of the attached claims. Both court bailiffs informed us that they had sent notice of the conservatory attachment to Alda via mail on May 6, 2019 and May 14, 2019 respectively.

6.     My colleague Julia Lubisch reported to me that she was informed by the OLG that it had sent both (i) our motion for recognition and enforcement of the Award and (ii) its decision regarding the preliminary enforceability as well as Dutch certified translations thereof to Alda's registered address in the Netherlands in March 2019.

7.     In its accompanying court order, the OLG had set Alda a period of one month from service of our motion for recognition and enforcement to defend itself against this motion, a deadline that, to my knowledge, could have been extended if Alda had substantiated in time the need for a longer deadline in a corresponding application.

8.     My colleague Julia Lubisch further reported to me that, upon her inquiry, the OLG, on or around May 23, 2019, informed her that (i) it had established, through tracking information of the postal service, that the documents were in fact served on Alda on April 3, 2019, and that (ii) in the more than seven weeks since then, Alda had failed to submit any defense against the confirmation of the Award.

9.     In absence of a defense, the OLG continued the proceedings without oral hearing, and, in its order of May 23, 2019 (the "Judgment"), handed down by a judicial panel of three judges, unanimously confirmed the enforceability of the Award in Germany.

Attached hereto as Exhibit 1 is a true and correct copy of a certified English translation of the OLG's May 23, 2019 Judgment and the original German May 23, 2019 Judgment.

10. In its Judgment, at page 4, the OLG formally noted that Alda was served on April 3, 2019 and had failed to submit a defense.

11. In absence of a defense, the OLG could not consider arguments under Art. V (1) of the New York Convention. The OLG nevertheless considered the counter-arguments raised by Alda in the arbitral proceedings and described in the Award, notably regarding the validity of the arbitration clause and standing of the Petitioners, in the context of an *ordre public* analysis under Art. V (2) of the New York Convention.

12. The OLG emphasized that, in this analysis, it was in no way bound by the conclusions of the arbitrator Jeffrey G. Benz, but could determine the question of jurisdiction and standing independently. Under that standard of review of the Award, the OLG found that the arbitration clause was valid and that both Petitioners had standing as beneficiaries of this clause, as it had found in its prior summary decision on preliminary enforceability.

13. In its May 23, 2019 Judgment, the OLG ordered Alda to bear the Petitioners' statutory attorney fees incurred in the German proceedings. Calculated on a value of claim of EUR 9,917,429.30 as specified in the Judgment, the fees will amount to approximately EUR 41,000 plus applicable VAT. In addition, Alda is obliged to bear the court fees of EUR 75,112 as well as translation costs of EUR 2,258.14.

14. Alda now has one month from service of this Judgment to appeal to the German Supreme Court (*Bundesgerichtshof*).

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on June 20, 2019 at Berlin, Germany.

Niklas Conrad

Exhibit 1

Exhibit 1

*- Certified translation from the German language -*

Certified copy

**Hanseatic Higher Regional Court**
File no.: 6 Sch 1/19

[Initials]
[Stamp: Received, May 28, 2019, Greenberg Traurig Germany, LLP]
[initials]

# Judgment

In the matter

1) **Matthias Paul,** Damaschkestraße 4, 10711 Berlin, Germany known under his pseydonym Paul van Dyk

**- Claimant -**

2) **paul van Dyk GmbH,** represented by the Managing Director Matthias Paul, Fanny-Zobel-Straße 11, 12435 Berlin, Germany

**- Claimant -**

Attorneys of record for 1 and 2:
**Greenberg Traurig Germany LLP**, Attorneys at Law, Potsdamer Platz 1, 10785 Berlin, Germany, reference: 169993.010100 NAD

versus

**ALDA Events B.V.,** represented by ALDA Group B.V., in turn represented by ALDA Holding B.V., Anthony Fokkerweg 61, 1059CP Amsterdam, the Netherlands

**- Respondent -**

The Hanseatic Higher Regional Court – 6th Civil Senate – by way of Dr. Bucholz, Presiding Judge at the Higher Regional Court, Judge Agger, Judge at the Higher Regional Court, and Judge Mundhenk, Judge at the Higher Regional Court, on May 23, 2019 adjudges as follows:

The arbitral award of the arbitrator Jeffrey G. Benz, International Centre for Dispute Resolution, ICDR Case No.: 01-17-0001-3926, of September 2, 2018, the operative part of which the German translation [1]is as follows:

"7.1 On the basis of the foregoing facts, legal analysis, and conclusions of fact, the Arbitrator renders the following award:

a. The Arbitrator awards in favor of Claimants and against Alda on the breach of contract and negligence claims the following economic damages:

[1] Translator's note: This is the literal translation of the German original. The following English text up to let. g) including has been copied from the referred operative part.

Stefanie Weeber
Rosenstraße 3
67099 Heiligenmoschel
Tel. 06363 - 93 42 9

- Past and future medical expenses in the amount of $2,153,837.63;
- Past and future lost profits in the sum of $3,387,173; and
- Other economic damage in the sum of $193,453.37.

b. The Arbitrator awards in favor of Paul and against Alda on his negligence claims the amount of $5,500,000 as non-economic damages.

c. The Arbitrator awards to Claimants and against Alda Claimants' pre- judgement interest as allowed by California law in the amount of $105,388.67.

d. The Arbitrator awards to Claimants, as prevailing party, and against Alda Claimants' attorneys' fees in the amount of $996,673.

e. The Arbitrator awards to Claimants, as prevailing party, and against Alda, Claimants' non-attorneys' fees costs in the amount of $148,217.61.

f. The Arbitrator awards in favor of Claimants the compensation and expenses of the Arbitrator and the administrative fees of the ICDR, as paid by Claimants, in the amount of $103,900.17.

g. This Final Award shall be in full and final resolution of all claims and counterclaims submitted to this Arbitration. The Arbitrator has considered all of the arguments made by the parties, whether or not they are specifically referenced in this Final Award. All claims not expressly granted herein are hereby denied.

is declared enforceable for the territory of the Federal Republic of Germany.

The costs of the proceeding shall be borne by Respondent based on a value of €9,917,429.30.

The judgment is preliminarily enforceable.

## Grounds:

I.

The Claimants request that the arbitral award of September 2, 2018 stated in the operative part of the judgment be declared enforceable. Compensation of Claimants' damages in



connection with an accident suffered by Claimant 1) was the subject matter of the case.

Claimant 1) is a DJ working as a composer and producer of electronic dance music under the pseudonym Paul van Dyk. Claimant 2) is a company belonging to Claimant 1), which he uses for processing and managing his business. Respondent organizes concerts and festivals, among them, until recently, the annual music Festival "A State of Trance".

Respondent hired Applicant 1) for the event "A State of Trance" issue 750 on February 27, 2016 in Utrecht by booking contract of September 25, 2015 (Exhibit AS 2). The expressly referenced "Additional Terms and Conditions" (ATC) are a part of the booking contract. Section 24 of the ATC contains the following arbitration and choice of law clause:
"This Agreement shall be construed in accordance with the laws of the State of California without regard to its application of choice of laws. Any claim or dispute arising out of or relating to this agreement or the breach thereof shall be settled by arbitration in Los Angeles, California in accordance with the commercial rules and regulations then in effect of the American Arbitration Association. The parties hereto agree to be bound by the award of such arbitration and judgement upon the award may be entered in any court having jurisdiction thereof (...)".

An accident occurred during the performance of Claimant 1) on the main stage of the event, during which Claimant 1) suffered severe and life-threatening injuries. A black molleton fabric was stretched from the stage, which gave the appearance of a solid expansion of the stage. When taking a step forward, Claimant 1) fell approximately 6 m through the cloth and suffered an impact on his head.

After negotiations of the parties regarding the claims for compensation of the Claimant had failed, Claimants in early 2017 initiated an arbitration proceeding in the USA pursuant to the rules of the International Centre for Dispute Resolution of the American Arbitration Association. This concluded on September 2, 2018 with the final arbitral award of the arbitrator Jeffrey G. Benz (Exhibit AS 1, Exhibit AS 3 (German translation of the operative part). In it, Respondent was sentenced to pay a total of more than USD12.5 million.



Claimants request

that the arbitral award is declared to be enforceable.

Respondent, which received the motion to declare the arbitral award enforceable on April 3, 2019, had opportunity to respond to the motion. It did not exercise this opportunity within the deadline granted to it.

II.

The motion to declare the arbitral award of September 2, 2018 enforceable is admissible and justified.

1.

The requested declaration of enforcement pursuant to Section 1061 para. 1 German Code of Civil Procedure (ZPO) is in compliance with the UN Convention of June 10, 1958 regarding the Recognition and Enforcement of Foreign Arbitral Awards (Federal Law Gazette 1961 II p. 121 – hereinafter "New York Convention").

a.) The competence of the court seized in the matter follows from Sec. 1062 para. 1 No. 4 in conjunction with para. 2 ZPO. It is a foreign arbitral award. Claimants have submitted and with Exhibits AS 4 and AS 5 have demonstrated that Respondent holds shares in a company (ALDA Germany GmbH) headquartered in Hamburg, Germany. The shares in a GmbH (limited liability company) are also located at the seat of the company (cf. *Zöller/Schultzky, ZPO*, 32nd ed., Sec. 23, marg. no. 10; *Patzina* in *Münchener Kommentar, ZPO,* 5th ed., Sec. 23, marg. no. 19).

b.) Claimant with the requested declaration of enforcement submitted a certified copy of the arbitral award (Exhibit AS 1). Thus, the requirements of Sec. 1064 para. 1 ZPO and Art. IV para. 1 lit. a) New York Convention are met. It furthermore submitted a - noncertified - translation of the operative part (Exhibit AS 3). While this does not comply with the requirement of Art. IV para. 2 New York Convention, this is without any detrimental effects because German law pursuant to Sec. 1064 para. 1 ZPO does not provide for a submission of a translation of the arbitral award. In this regard, the favorability solution of Art. VII para. 1 New York Convention (cf. Federal Supreme Court NJW-RR 2004, 1504, cited from juris, marg. no. 10) applies for Claimant.
Claimant furthermore submitted a noncertified copy of the contract concluded between the parties (Exhibit AS 2). Clause 24 of the "Additional Terms and Conditions" contains the arbitration

Stefanie Weeber
Rosenstraße 3
67699
Heiligenmoschel
Tel. 06363 - 99 42 97

regulation. A certified translation has however not been submitted, thus the requirements of Art. IV para. 1 lit. b) and Art. IV para. 2 New York Convention have not been met. This, however, is also without any detrimental effects because German law pursuant to Sec. 1064 para. 1 ZPO does not provide for submission of the arbitral award plus translation. The favorability solution pursuant to Art. VII para. 1 New York Convention (cf. Federal Supreme Court NJW-RR 2004, 1504, cited from juris, marg. no. 10) also applies for Claimants in this regard.

2.

Grounds for refusal pursuant to Art. V of the UN Convention of June 10, 1958 regarding the Recognition and Enforcement of Foreign Arbitral Awards (Federal Law Gazette 1961 II p. 121) do not exist.

a.) Respondent, who has been given opportunity to respond pursuant to Sec. 1063 Para. 1 Clause 2 ZPO, did not assert grounds for refusal pursuant to Art. V para. 1 New York Convention.

b.) Grounds for refusal pursuant to Art. V para. 2 New York Convention also do not exist. The subject matter of the dispute, claims for damages, can be regulated in arbitration proceedings pursuant to German law. The enforcement of the arbitral award also does not contradict public order of the Federal Republic of Germany. Pursuant to Art. V para.2 lit. b) New York Convention, recognition of the arbitration award—even without corresponding motion—may be refused if recognition or enforcement of the arbitral award would contradict the public order of the country requested. Recognition of an arbitral award may, among other things, violate German public order if it was issued without a regulation regarding arbitration proceedings having been negotiated. Pursuant to German legal understandings and the understanding of public order, an arbitration court cannot "sentence" anyone who did not voluntarily submit itself to such arbitration court. In this case, a violation of the principle of legally competent judges and free access to (state) courts would exist (cf. Higher Regional Court Rostock, judgment of November 22, 2001 - 1 Sch 3/2000. marg. no. 67 - 70, juris; *Adolphsen* in *Münchener Kommentar, ZPO,* 5th ed., Appendix 1 Sec. 1061 (New York Convention) Art. V marg. no. 72 ).

While it follows from the arbitral award that Respondent did not enter into the arbitration proceeding without objection but disputed the existence of an arbitration agreement, in particular with regard to Claimant 1), the existence of an arbitration clause was overall affirmed by the arbitrator. However, the Senate is not bound to this assessment because the arbitration court did not have "jurisdictional competency" ("Kompetenz-Kompetenz") in this regard (cf. Higher Regional Court

Stefanie Weeber Rosenstraße 3 67699 Heiligenmoschel Tel. 06363 - 99 42 9

Düsseldorf, IHR 2015, 18, cited from juris, marg. no. 49; *Zöller/Geimer*, loc. cit., Appendix Sec. 1061, marg. no. 1). The fully staffed Senate follows the opinion of the chairperson in its decision regarding the motion for enforcement of the security of February 27, 2019 that (after summary review in that case) an arbitration clause was validly negotiated and follows the substantiation there:

(1) The formulation in Clause 24 of the "Additional Terms and Conditions" is unambiguous. Pursuant to the first page of the contract (Exhibit AS 2), these "Additional Terms and Conditions" are expressly included in the contract. The fact that page 6 was initialed only on one side is clearly an oversight in particular because the text of Clause 23 on page 5 (initialed on both sides) stops "in the middle" and is continued on page 6, so that the existence of another page is obvious. An initial on every page is not a requirement for the validity of an agreement. The fact that a choice of venue clause is obviously negotiated in the "Streaming and Broadcast Agreement" in Clause VII (to the benefit of the "competent court in Los Angeles"), is also harmless. It is possible that this choice of venue clause pertains only to the Streaming and Broadcast Agreement and not to the other agreements. Even if one were to be of a different opinion, a choice of venue agreement would not preclude an arbitration agreement (cf. Federal Supreme Court NJW-RR 2007, 1719, cited from juris, marg. no. 18 et seqq.).

(2) Insofar as Respondent in the arbitration proceeding claimed that Mrs. Trigo was not authorized to sign the contract for Claimants, it must be noted that Claimant 1) in fact performed at the festival and thus by implication approved the agreement.

(3) The Senate does not follow Respondent's objection in the arbitration proceeding that the arbitration clause only applies to Claimant 2) that not to Claimant 1). While the contract indicates that the agreement was to have in fact been concluded only between Claimant 2) and Respondent, the contract mentions an "agreement between" Paul van Dyk GmbH (as producer) and ALDA Events BV (as purchaser). Claimant 1) is mentioned as "artist". It is stated that the producer shall be "furnishing the services of the artist". On page 2 of the agreement, only 2 signature lines are provided for, namely for the producer (Claimant 2)) and the purchaser (Respondent), not for the artist (Claimant 1)). It is the opinion of the Senate that the fact that the affixed stamp features the name "paul van dyk" in bold font and the name Paul van Dyk GmbH in a smaller font does not mandatorily indicate that the stamp also refers to Claimant 1).

It may also simply be the short description of Claimant 2) (without addition of the corporate form). This however does not invalidate the arbitration clause. The option of an arbitration agreement to the benefit of third parties ("Schiedsvereinbarung zugunsten Dritter") is possible (cf. Higher Regional Court Düsseldorf, *SchiedsVZ* 2006, 331, cited from juris, marg. no. 28; *Musielak/Voit, ZPO*, 5th ed., Sec. 1031, marg. no. 3; *Stein/Jonas/Schlosser, ZPO*, 23rd ed., Sec. 1029, marg. no. 70; *Zöller/Geimer*, loc. cit., Sec. 1031, marg. no. 18; *Lachmann, Handbuch für die Schiedsgerichtspraxis*, 3rd ed., marg. no. 503; other opinion *Münch* in *Münchener Kommentar, ZPO*, loc. cit., Sec. 1031, marg. no. 18). Aside from this, the arbitration clause applies to the third-party beneficiary if an agreement to the benefit of third parties ("Vertrag zugunsten Dritter") in terms of Sec. 328 et seqq. BGB (German Civil Code) was concluded (cf. *Münch* in *Münchener Kommentar*, ZPO, loc. cit., Sec. 1031, marg. no. 18; *Stein/Jonas/Schlosser*, loc. cit., Sec. 1031, marg. no. 70; *Baumbach/Lauterbach/Albers/Hartmann, ZPO*, 77th ed., Sec. 1029, marg. no. 23; *Lachmann*, loc. cit., marg. no. 502, *Schwab/Walter, Schiedsgerichtsbarkeit*, 7th ed., Chapter. 7, marg. no. 36). This also applies to the beneficiary of an agreement with protective effect to the benefit of a third party ("Vertrag mit Schutzwirkung zugunsten Dritter") (cf. *Stein/Jonas/Schlosser*, loc. cit., Sec. 1029, marg. no. 70).

The contract regulates various rights of Claimant 1) (as "artist"). For example Clause 4 at the end reads "consent of the Artist". Clause 13 of the Additional Terms and Conditions includes a liability limitation in case of a contractual violation of the "artist". Clause 16 let. a) includes the "artist" in the negotiated insurance coverage. Clause 17 includes a liability release also to the benefit of the "artist". Clause 18 regulates exclusion of liability also to the benefit of the "artist". In this regard, an "agreement to the benefit of third parties" ("Vertrag zugunsten Dritter") can definitely be assumed. With regard to the disputed accident, Clause 1 of the Additional Terms and Conditions is relevant, according to which Respondent is obligated to ensure a "save environment" for the performance. In this context, Claimant 1) is included in the protective scope of the contract. Therefore, the arbitration clause was also validly negotiated with effect for Claimant 1).

However, in the present case, California law (and thus common law) applies, not German law. US case law also recognizes that an arbitration clause also covers third parties (cf. substantiation in *Stein/Jonas/Schlosser*, loc. cit., Appendix for Sec. 1061, marg. no. 85, footnotes 245 and 252). In the ruling "Thomson CSF v. Evans & Sutherland Computer Corporation" of August 24, 1995, the US Court of Appeals, Second Circuit, ruled that a contractual partner upon "insistence" of a third party (not involved in the agreement) is bound to an arbitration clause of the disputed items which the third party wishes to have settled are sufficiently "intertwined" with the agreement containing

Stefanie Weber Rosenstraße 3 67699 Heiligenmoschel Tel. 06363 - 93 42 91

the arbitration clause ("In these cases, a signatory was bound to arbitrate with a nonsignatory at

the nonsignatory's insistence because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract and the fact that the claims were intimately founded in and interwined with the underlying contract obligations") (cited from "caselaw.findlaw.com/us-2nd-circuit/1305040.html"). These requirements are met here: Claimant 1) during his performance paid by Respondent suffered an accident while falling from the stage, the safety of which was within the scope of responsibility of Respondent.

3.)

The cost ruling follows from Sec. 91 Para. 1 ZPO. The ruling regarding the preliminary enforceability follows from Sec. 1064 Para. 2 ZPO.

The Senate has assessed the value in dispute pursuant to the value of the arbitral award without interest and costs (cf. *Zöller/Herget*, loc. cit., 32nd ed., Sec. 3 *ZPO* marg. no 16 "Schiedsrichterliches Verfahren"): *Hauptsachestreitwert* (p. 69 of the arbitral award [Exhibit AS 1]): $2,153,837.63 + $3,387,173.00 + $193,453.37 + $5,500,000.00 = $11,234,46.90. The ECB reference exchange rate on February 18, 2019 (receipt of motion) = 1.1328 = €9,917,429.30.

## Instructions on right to appeal:

An appeal may be lodged against this ruling. The appeal is admissible only if the legal matter is of fundamental significance or requires further development of the law or safeguarding of uniform case law through a ruling of the Federal Supreme Court.

The appeal must be lodged within a statutory time limit of **one month** before the

Federal Supreme Court Karlsruhe
Herrenstr. 45 A
76133 Karlsruhe
Germany

The time limit commences upon service of the ruling.

The appeal is lodged by submission of notice of appeal.
The notice of appeal must contain the description of the contested ruling and the declaration that an appeal is being lodged.

The participants must be represented by an attorney admitted to practice before the supreme court.

The appeal must furthermore be substantiated within a deadline of **one month**. The deadline also commences upon service of the contested decision.

Stefanie Weeber
Rosenstraße 3
67699 Heiligenmoschel
Tel. 06353 - 93 42 97

Appeals may also be submitted as an **electronic document**. A simple email does not meet statutory requirements.

The electronic document must
- bear a qualified electronic signature of the responsible person, or
- be signed by the responsible person and submitted in a secure transmission.

An electronic document bearing a qualified electronic signature of the responsible person may be transmitted as follows:
- in a secure transmission, or
- to the electronic court and administrative inbox of the court set up for the receipt of electronic documents.

With regard to secure transmissions, reference is made to Sec. 130a para. 4 of the Code of Civil Procedure. With regard to additional requirements regarding electronic communication with courts, reference is made to the order regarding technological framework in electronic legal communication and the special electronic official inbox (Electronic Legal Transaction Order [Elektronischer-Rechtsverkehr-Verordnung (ERVV)]) as amended as well as the internet page www.justiz.de .

| Dr. Buchholz | Agger | Mundhenk |
|---|---|---|
| Presiding judge at the Higher Regional Court | Judge at the Higher Regional Court | Judge at the District Court |

*[Seal of the Hanseatic Higher Regional Court Hamburg]*

Confirming the accuracy of the copy
Hamburg, May 24, 2019

Ludwig, Judicial Clerk
Clerk of the Court
Certified by machine processing
-valid without a signature

*- Certified translation from the German language -*

[Seal of the Hanseatic Higher Regional Court Hamburg



*******************************************************

*This is to certify that the preceding text is a true and accurate English translation of the enclosed document.*

***Document was presented electronically as a scan.***

*Heiligenmoschel, 3 June 2019* ........................................

*(Stefanie Weeber)*

Stefanie Weeber
Rosenstraße 3
67699
Heiligenmoschel
Tel. 06363 - 99 42 97

*Duly authorized translator of English and German for the Courts of the German Federal State of Rhineland-Palatinate by the President of the Higher Regional Court of Zweibrücken (Germany).*





Beglaubigte Abschrift

**Hanseatisches Oberlandesgericht**
Az.: 6 Sch 1/19

EINGANG
28. Mai 2019
Greenberg Traurig Germany, LLP

# Beschluss

In der Sache

1) **Matthias Paul**, Damaschkestraße 4, 10711 Berlin
bekannt unter dem Künstlernamen Paul van Dyk

**- Antragsteller -**

2) **paul van Dyk GmbH**, vertreten durch den Geschäftsführer Matthias Paul, Fanny-Zobel-Straße 11, 12435 Berlin

**- Antragstellerin -**

Prozessbevollmächtigte zu 1 und 2:
Rechtsanwälte **Greenberg Traurig Germany LLP**, Potsdamer Platz 1, 10785 Berlin, Gz.: 169993.010100 NAD

gegen

**ALDA Events B.V.**, vertreten durch die ALDA Group B.V., diese vertreten durch die ALDA Holding B.V., Anthony Fokkerweg 61, 1059CP Amsterdam, Niederlande

**- Antragsgegnerin -**

beschließt das Hanseatische Oberlandesgericht - 6. Zivilsenat - durch den Vorsitzenden Richter am Oberlandesgericht Dr. Buchholz, die Richterin am Oberlandesgericht Agger und den Richter am Landgericht Mundhenk am 23.05.2019:

Der in Los Angeles (Kalifornien, USA) ergangene Schiedsspruch des Einzelschiedsrichters Jeffrey G. Benz, International Centre for Dispute Resolution, ICDR Case No.: 01-17-0001-3926, vom 2. September 2018, dessen Tenor in deutscher Übersetzung wie folgt lautet:

„7.1 Auf der Grundlage der vorgenannten Tatsachen, rechtlichen Analysen und Tatsachenfeststellungen erlässt der Schiedsrichter den folgenden Schiedsspruch:

a. Der Schiedsrichter spricht den Klägern gegen Alda in Bezug auf die Forderungen wegen Vertragsverletzung und Fahrlässigkeit Ersatzansprüche für die folgenden wirtschaftlichen

Stefanie Weeber Rosenstraße 3 67699 Heiligenmoschel

Schäden zu:

- vergangene und zukünftige Behandlungskosten in Höhe von $ 2.153.837,63;
- vergangene und zukünftige entgangene Gewinne in Höhe von $ 3.387.173; und
- sonstige wirtschaftliche Schäden in Höhe von $ 193.453,37.

b. Der Schiedsrichter spricht Paul gegen Alda in Bezug auf seine Forderungen wegen Fahrlässigkeit einen Betrag von $ 5.500.000 als Ersatz immaterieller Schäden zu.

c. Der Schiedsrichter spricht den Klägern gegen Alda in Einklang mit kalifornischem Recht Zinsen der Kläger für den Zeitraum vor dem Urteil in Höhe von $ 105.388,67 zu.

d. Der Schiedsrichter spricht den Klägern als obsiegender Partei gegen Alda einen Betrag von $ 996.673 für Anwaltskosten der Kläger zu.

e. Der Schiedsrichter spricht den Klägern als obsiegender Partei gegen Alda für Kosten der Kläger, die nicht Anwaltsgebühren sind, einen Betrag von $ 148.217,61 zu.

f. Der Schiedsrichter spricht den Klägern in Bezug auf die von den Klägern gezahlte Vergütung und Auslagen des Schiedsrichters und Verwaltungsgebühren des ICDR einen Betrag in Höhe von $ 103.900,17 zu.

g. Dieser Endschiedsspruch ist die vollständige und endgültige Entscheidung über alle Ansprüche und Gegenansprüche, die im Rahmen dieses Schiedsverfahrens geltend gemacht wurden. Der Schiedsrichter hat alle Argumente der Parteien berücksichtigt, unabhängig davon, ob sie in diesem Endschiedsspruch ausdrücklich erwähnt werden. Alle hierin nicht ausdrücklich zugesprochenen Ansprüche werden hiermit zurückgewiesen."

wird für das Hoheitsgebiet der Bundesrepublik Deutschland für vollstreckbar erklärt.

Die Kosten des Verfahrens trägt die Antragsgegnerin nach einem Gegenstandswert von € 9.917.429,30.

Der Beschluss ist vorläufig vollstreckbar.

## Gründe:

I.

Die Antragsteller beantragen die Vollstreckbarerklärung des im Beschlusstenor genannten Schiedsspruchs vom 2. 9. 2018. In der Sache geht es um Schadensersatzansprüche der

Stefanie Wecker Rosenstraße 3 67699 Heiligenmoschel Tel. 06363 - 99 42 9

Antragsteller im Zusammenhang mit einem von dem Antragsteller zu 1.) erlittenen Unfall.

Der Antragsteller zu 1.) ist ein DJ, der als Komponist und Produzent von elektronischer Tanzmusik unter dem Künstlernamen Paul van Dyk tätig ist. Die Antragstellerin zu 2.) ist eine dem Antragsteller zu 1.) gehörende Gesellschaft, die er zur Abwicklung und zum Management seiner Geschäfte hinzuzieht. Die Antragsgegnerin organisiert und veranstaltet Konzerte und Festivals, darunter bis vor Kurzem das jährliche Musikfestival „A State of Trance".

Die Antragsgegnerin engagierte den Antragsteller zu 1.) für die Veranstaltung „A State of Trance" Ausgabe 750, am 27. Februar 2016 in Utrecht per Buchungsvertrag vom 25. September 2015 (Anlage AS 2). Bestandteil des Buchungsvertrages sind die ausdrücklich in Bezug genommenen „Additional Terms and Conditions", die Allgemeinen Geschäftsbedingungen (AGB). § 24 der AGB enthält die folgende Schieds- und Rechtswahlkausel:

„This Agreement shall be construed in accordance with the laws of the State of California without regard to its application of choice of laws. Any claim or dispute arising out of or relating to this agreement or the breach thereof shall be settled by arbitration in Los Angeles, California in accordance with the commercial rules and regulations then in effect of the American Arbitration Association. The parties hereto agree to be bound by the award of such arbitration and judgement upon the award may be entered in any court having jurisdiction thereof (...)".

Beim Auftritt des Antragstellers zu 1.) auf der Hauptbühne der Veranstaltung ereignete sich ein Unfall, bei dem sich der Antragsteller zu 1.) schwerwiegend und lebensbedrohlich verletzte. Von der Bühne aus war ein schwarzes Moltontuch gespannt, das den Anschein einer soliden Erweiterung der Bühne erweckte. Bei einem Schritt nach vorn fiel der Antragsteller zu 1.) durch das Tuch circa sechs Meter in die Tiefe und schlug mit dem Kopf auf.

Nachdem Verhandlungen der Parteien über Schadensersatzforderungen der Antragsteller gescheitert waren, strengten die Antragsteller Anfang 2017 ein Schiedsverfahren in den USA nach den Regeln des International Centre for Dispute Resolution der American Arbitration Association an. Dieses kam am 2. September 2018 mit dem Endschiedsspruch des Einzelschiedsrichters Jeffrey G. Benz (Anlage AS 1, Anlage AS 3 (deutsche Übersetzung des Tenors) zu seinem Abschluss. Die Antragsgegnerin ist darin zu einer Zahlung von insgesamt über 12,5 Mio USD verurteilt worden.



Die Antragsteller beantragen,

den Schiedsspruch für vollstreckbar zu erklären.

Die Antragsgegnerin, der der Antrag auf Vollstreckbarerklärung des Schiedsspruchs am 3. April 2019 zugestellt wurde, hat Gelegenheit erhalten, zu dem Antrag Stellung zu nehmen. Von dieser Möglichkeit hat sie innerhalb der ihr gesetzten Frist keinen Gebrauch gemacht.

II.

Der Antrag auf Vollstreckbarerklärung des Schiedsspruchs vom 2. September 2018 ist zulässig und begründet.

1.

Die begehrte Vollstreckbarerklärung richtet sich gemäß § 1061 Abs.1 ZPO nach dem UN-Übereinkommen vom 10. Juni 1958 über die Anerkennung und Vollstreckung ausländischer Schiedssprüche (BGBl 1961 II S.121 - im Folgenden UNÜ).

a.) Die Zuständigkeit des angerufenen Gerichts ergibt sich aus § 1062 Abs. 1 Nr. 4 i.V.m. Abs. 2 ZPO. Es handelt sich um einen ausländischen Schiedsspruch. Die Antragsteller haben vorgetragen und durch die Anlagen AS 4 und AS 5 belegt, dass die Antragsgegnerin Geschäftsanteile an einer Gesellschaft (ALDA Germany GmbH) besitzt, die ihren Sitz in Hamburg hat. Der Geschäftsanteil an einer GmbH ist auch am Sitz der Gesellschaft belegen (vgl. Zöller/Schultzky, ZPO, 32. Aufl., § 23, Rn. 10; Patzina in Münchener Kommentar, ZPO, 5. Aufl., § 23, Rn. 19).

b.) Die Antragstellerin hat mit dem Antrag auf Vollstreckbarerklärung den Schiedsspruch in beglaubigter Abschrift vorgelegt (Anlage AS 1). Damit ist der Vorschrift des § 1064 Abs. 1 ZPO sowie des Art. IV Abs. 1 lit. a) UNÜ Genüge getan. Sie hat ferner eine - nicht beglaubigte - Übersetzung des Tenors vorgelegt (Anlage AS 3). Die Vorschrift des Art. IV Abs. 2 UNÜ ist damit zwar nicht eingehalten. Das ist aber unschädlich, weil das deutsche Recht gemäß § 1064 Abs. 1 ZPO die Vorlage einer Übersetzung des Schiedsspruchs nicht vorsieht. Insoweit gilt für die Antragstellerin das Günstigkeitsprinzip des Art. VII Abs. 1 UNÜ (vgl. BGH NJW-RR 2004, 1504, zitiert nach juris, Tz. 10).

Die Antragstellerin hat ferner eine nicht beglaubigte Abschrift des zwischen den Parteien geschlossenen Vertrags vorgelegt (Anlage AS 2). In Ziff. 24 der Geschäftsbedingungen ("Additional Terms and Conditions") ist die Schiedsvereinbarung enthalten. Eine beglaubigte

Von des Pfälzischen Oberlandesgerichts Zweibrücken für gerichtliche Angelegenheiten ... Stefanie Weeber Rosenstraße 3 ... Heiligenmoschel Tel 06363 - ...

Übersetzung ist allerdings nicht vorgelegt worden. Damit ist den Vorschriften des Art. IV Abs. 1 lit. b) und Art. IV Abs. 2 UNÜ zwar nicht Genüge getan. Auch dies ist aber unschädlich, weil das deutsche Recht gemäß § 1064 Abs. 1 ZPO die Vorlage der Schiedsvereinbarung nebst Übersetzung nicht vorsieht. Auch insoweit gilt für die Antragsteller das Günstigkeitsprinzip des Art. VII Abs. 1 UNÜ (vgl. BGH NJW-RR 2004, 1504, zitiert nach juris, Tz. 10).

2.

Versagungsgründe gemäß Art. V des UN-Übereinkommen vom 10.06.1958 über die Anerkennung und Vollstreckung ausländischer Schiedssprüche (BGBl 1961 II S. 121) sind nicht gegeben.

a.) Die Antragsgegnerin, der gemäß § 1063 Abs. 1 S. 2 ZPO Gelegenheit zur Stellungnahme gegeben wurde, hat keine Versagungsgründe gemäß Art. V Abs. 1 UN-Übereinkommen geltend gemacht.

b.) Es liegen auch keine Versagungsgründe gemäß Art. V Abs. 2 UN-Übereinkommen vor.
Der Gegenstand des Streits, Schadensersatzansprüche, kann nach deutschem Recht auf schiedsrichterlichem Wege geregelt werden. Die Vollstreckung des Schiedsspruchs widerspricht auch nicht der öffentlichen Ordnung der Bundesrepublik Deutschland. Gemäß Art. V Abs.2 lit. b) UNÜ darf die Anerkennung des Schiedsspruchs - selbst ohne entsprechenden Antrag - auch dann versagt werden, wenn die Anerkennung oder die Vollstreckung des Schiedsspruchs der öffentlichen Ordnung des ersuchten Landes widersprechen würde. Die Anerkennung eines Schiedsspruchs verstößt u.a. dann gegen den deutschen ordre public, wenn er ergangen ist, obwohl keine Schiedsvereinbarung getroffen wurde. Nach deutschem Rechtsverständnis und nach deutschen Ordnungsvorstellungen darf niemand von einem Schiedsgericht "verurteilt" werden, dessen Spruch er sich nicht freiwillig unterworfen hat. Insoweit wäre ein Verstoß gegen den Grundsatz des gesetzlichen Richters und des freien Zugangs zum (staatlichen) Gericht gegeben (vgl. OLG Rostock, Beschluss vom 22. November 2001 – 1 Sch 3/2000 –, Rn. 67 - 70, juris; Adolphsen in Münchener Kommentar, ZPO, 5. Aufl., Anh. 1 § 1061 (UNÜ) Art. V Rn. 72 ).

Aus dem Schiedsspruch ergibt sich zwar, dass sich die Antragsgegnerin nicht rügelos auf das Schiedsverfahren eingelassen hat, sondern das Bestehen einer Schiedsabrede - insbesondere hinsichtlich des Antragstellers zu 1) - bestritten hat. Der Einzelschiedsrichter hat das Bestehen einer Schiedsklausel insgesamt bejaht. Der Senat ist an diese Beurteilung aber nicht gebunden, weil das Schiedsgericht insoweit keine „Kompetenz-Kompetenz" hat (vgl. OLG Düsseldorf, IHR 2015, 18, zitiert nach juris, Tz. 49; Zöller/Geimer, a.a.O., Anh § 1061, Rn. 1). Der vollbesetzte

Stefanie Weber ... Tel. 06353 - ...

Senat folgt der Auffassung des Vorsitzenden in seiner Entscheidung über den Antrag auf Sicherungsvollstreckung vom 27. Februar 2019, dass (nach dortiger nur summarischer Prüfung) eine Schiedsklausel wirksam vereinbart wurde und macht sich die dortige Begründung zu eigen:

(1) Die Formulierung in Ziff. 24 der „Additional Terms and Conditions" ist eindeutig. Ausweislich der ersten Seite des Vertrages (Anlage AS 2) sind diese „Additional Terms and Conditions" in den Vertrag ausdrücklich einbezogen. Dass die Seite 6 nur einseitig paraphiert worden ist, ist ersichtlich ein Versehen, zumal der Text von Ziff. 23 auf Seite 5 (die von beiden Seiten paraphiert ist) „mittendrin" aufhört und auf Seite 6 fortgesetzt wird, so dass die Existenz einer weiteren Seite offensichtlich ist. Eine Paraphe auf jeder Seite ist nicht Wirksamkeitsvoraussetzung einer Vereinbarung. Dass im „Streaming and Broadcast Agreement" in Ziff. VII offenbar eine Gerichtsstandsvereinbarung getroffen worden ist (zugunsten des „competent court in Los Angeles"), ist unschädlich. Es ist möglich, dass sich diese Gerichtsstandsvereinbarung nur auf das Streaming and Broadcast Agreement und nicht auf die anderen Vereinbarungen bezieht. Selbst wenn man das anders sehen würde, würde eine Gerichtsstandsvereinbarung eine Schiedsvereinbarung nicht ausschließen (vgl. BGH NJW-RR 2007, 1719, zitiert nach juris, Tz. 18 ff.).

(2) Soweit sich die Antragsgegnerin im Schiedsverfahren darauf berufen hat, dass Frau Trigo nicht bevollmächtigt gewesen sei, den Vertrag für die Antragsteller zu unterzeichnen, ist darauf hinzuweisen, dass der Antragsteller zu 1) tatsächlich auf dem Festival aufgetreten ist und damit die Vereinbarung konkludent genehmigt hat.

(3) Dem Einwand der Antragsgegnerin im Schiedsverfahren, die Schiedsklausel gelte nur für die Antragstellerin zu 2), nicht für den Antragsteller zu 1), folgt der Senat nicht. Zwar spricht der Vertrag dafür, dass der Vertrag tatsächlich nur zwischen der Antragstellerin zu 2) und der Antragsgegnerin geschlossen werden sollte. Im Vertrag ist von einem „Agreement" zwischen ("between") der Paul van Dyk GmbH (als Producer) und ALDA Events BV (als Purchaser) die Rede. Der Antragsteller zu 1) wird zwar als „Artist" erwähnt. Es heißt, dass der Producer die Leistungen des Künstlers „liefert" ("furnishing the services of the artist"). Auf Seite 2 des Vertrages sind nur zwei Unterschriftenzeilen vorgesehen, nämlich für den Producer (die Antragstellerin zu 2)) und den Purchaser (die Antragsgegnerin), nicht für den Künstler (den Antragsteller zu 1)). Dass der verwendete Stempel in Fettdruck den Namen „paul van dyk" und in kleinerer Schrift den Namen Paul van Dyk GmbH enthält, weist nach Auffassung des Senats nicht zwingend darauf hin, dass der Stempel sich auch auf den Antragsteller zu 1) beziehen sollte. Es

Stefanie Weeber Rosenstraße 3 67699 Heiligenmoschel Tel. 06363 - 90 42 97

kann sich auch einfach um die Kurzbezeichnung der Antragstellerin zu 2) (ohne Zusatz der Gesellschaftsform) handeln. Das macht die Schiedsklausel aber nicht unwirksam. Zum einen gibt es die Möglichkeit einer Schiedsvereinbarung zugunsten Dritter (vgl. OLG Düsseldorf, SchiedsVZ 2006, 331, zitiert nach juris, Tz. 28; Musielak/Voit, ZPO, 5. Aufl., § 1031, Rn. 3; Stein/Jonas/Schlosser, ZPO, 23. Aufl., § 1029, Rn. 70; Zöller/Geimer, a.a.O., § 1031, Rn. 18; Lachmann, Handbuch für die Schiedsgerichtspraxis, 3. Aufl., Rn. 503; a.A. Münch in Münchener Kommentar, ZPO, a.a.O., § 1031, Rn. 18). Abgesehen davon gilt die Schiedsklausel für den begünstigten Dritten, wenn ein Vertrag zugunsten Dritter im Sinne von § 328 ff. BGB abgeschlossen worden ist (vgl. Münch in Münchener Kommentar, ZPO, a.a.O., § 1031, Rn. 18; Stein/Jonas/Schlosser, a.a.O., § 1031, Rn. 70; Baumbach/Lauterbach/Albers/Hartmann, ZPO, 77. Aufl., § 1029, Rn. 23; Lachmann, a.a.O., Rn. 502, Schwab/Walter, Schiedsgerichtsbarkeit, 7. Aufl., Kap. 7, Rn. 36). Das gilt auch für den Berechtigten eines Vertrags mit Schutzwirkung zugunsten Dritter (vgl. Stein/Jonas/Schlosser, a.a.O., § 1029, Rn. 70).

In dem Vertrag sind verschiedene Rechte des Antragstellers zu 1) (als „Artist") geregelt. So ist etwa in Ziff. 4 am Ende von „consent of the Artist" die Rede. In Ziff. 13 der Additional Terms and Conditions ist von einer Haftungsbeschränkung bei einer Vertragsverletzung des „Artist" die Rede. In Ziff. 16 lit. a) wird der „Artist" in den vereinbarten Versicherungsschutz mit einbezogen. In Ziff. 17 ist eine Haftungsfreistellung auch zugunsten des „Artist" vereinbart. In Ziff. 18 ist ein Haftungsausschluss auch zugunsten des „Artist" geregelt. Insoweit ist durchaus von einem „Vertrag zugunsten Dritter" auszugehen. Soweit es um den streitgegenständlichen Unfall geht, ist Ziff. 1 der „Additional Terms and Conditions" einschlägig, wonach die Antragsgegnerin verpflichtet ist, für eine „sichere Umgebung" ("safe environment") für den Auftritt zu sorgen. In diesem Zusammenhang ist der Antragsteller zu 1) in die Schutzwirkung des Vertrags mit einbezogen. Dann ist die Schiedsklausel auch für ihn wirksam vereinbart worden.

Im vorliegenden Fall ist zwar nicht deutsches, sondern kalifornisches Recht (und damit common law) anwendbar. Auch in der Rechtsprechung der US-Gerichte ist aber die Erstreckung einer Schiedsklausel auf Dritte anerkannt (vgl. die Nachweise bei Stein/ Jonas/Schlosser, a.a.O., Anhang zu § 1061, Rn. 85, Fn. 245 und 252). In der Entscheidung „Thomson CSF v. Evans & Sutherland Computer Corporation" vom 24. 8. 1995 hat der US Court of Appeals, Second Circuit, entschieden, dass ein Vertragspartner auf Verlangen ("insistence") eines Dritten (nicht am Vertrag Beteiligten) an eine Schiedsklausel gebunden ist, wenn die Streitpunkte, die der Dritte entschieden haben will, ausreichend mit dem Vertrag verwoben ("intertwined") sind, der die Schiedsklausel enthält ("In these cases, a signatory was bound to arbitrate with a nonsignatory at

... des Pfälzischen Oberlandesgerichts Zweibrücken ... der deutschen Sprache für ... Stefanie ... Rose... 67... Heilige... 41

the nonsignatory's insistence because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract and the fact that the claims were intimately founded in and interwined with the underlying contract obligations") (zitiert nach „caselaw.findlaw.com/us-2nd-circuit/1305040.html"). Diese Voraussetzungen sind hier erfüllt: Der Antragsteller zu 1.) ist während seiner von der Antragsgegnerin bezahlten Performance bei einem Sturz von der Bühne verunglückt, für deren Sicherheit die Antragsgegnerin verantwortlich war.

3.)

Die Kostenentscheidung ergibt sich aus § 91 Abs. 1 ZPO. Die Entscheidung betreffend die vorläufige Vollstreckbarkeit folgt aus § 1064 Abs. 2 ZPO.

Den Streitwert hat der Senat entsprechend dem Wert des Schiedsspruchs ohne Zinsen und Kosten festgesetzt (vgl. Zöller/Herget, a.a.O., 32. Aufl., § 3 ZPO Rz 16 "Schiedsrichterliches Verfahren"): Hauptsachestreitwert (S.69 des Schiedsspruches [Anlage AS 1]): $ 2.153.837,63 + $ 3.387.173,- + $ 193.453,37 + $ 5.500.000,- = $ 11.234.463,90. Referenzkurs der EZB am 18.2.2019 (Antragseingang)= 1,1328 = € 9.917.429,30.

## Rechtsbehelfsbelehrung:

Gegen diese Entscheidung kann Rechtsbeschwerde eingelegt werden. Die Rechtsbeschwerde ist nur zulässig, wenn die Rechtssache grundsätzliche Bedeutung hat oder die Fortbildung des Rechts oder die Sicherung einer einheitlichen Rechtsprechung eine Entscheidung des Bundesgerichtshofs erfordert.

Die Rechtsbeschwerde ist binnen einer Notfrist von **einem Monat** bei dem

Bundesgerichtshof Karlsruhe
Herrenstr. 45 A
76133 Karlsruhe

einzulegen.

Die Frist beginnt mit der Zustellung der Entscheidung.

Die Rechtsbeschwerde wird durch Einreichen einer Rechtsbeschwerdeschrift eingelegt.
Die Rechtsbeschwerdeschrift muss die Bezeichnung der angefochtenen Entscheidung und die Erklärung enthalten, dass Rechtsbeschwerde eingelegt werde.

Die Beteiligten müssen sich durch eine bei dem Bundesgerichtshof zugelassene Rechtsanwältin oder einen dort zugelassenen Rechtsanwalt vertreten lassen.

Die Rechtsbeschwerde ist zudem binnen einer Frist von **einem Monat** zu begründen. Die Frist beginnt ebenfalls mit der Zustellung der angefochtenen Entscheidung.

des Pfälzischen Oberlandesgerichts Zweibrücken ... für gerichtliche Angelegenheiten ... Stefanie Wo...

Rechtsbehelfe können auch als **elektronisches Dokument** eingereicht werden. Eine einfache E-Mail genügt den gesetzlichen Anforderungen nicht.

Das elektronische Dokument muss
- mit einer qualifizierten elektronischen Signatur der verantwortenden Person versehen sein oder
- von der verantwortenden Person signiert und auf einem sicheren Übermittlungsweg eingereicht werden.

Ein elektronisches Dokument, das mit einer qualifizierten elektronischen Signatur der verantwortenden Person versehen ist, darf wie folgt übermittelt werden:
- auf einem sicheren Übermittlungsweg oder
- an das für den Empfang elektronischer Dokumente eingerichtete Elektronische Gerichts- und Verwaltungspostfach (EGVP) des Gerichts.

Wegen der sicheren Übermittlungswege wird auf § 130a Absatz 4 der Zivilprozessordnung verwiesen. Hinsichtlich der weiteren Voraussetzungen zur elektronischen Kommunikation mit den Gerichten wird auf die Verordnung über die technischen Rahmenbedingungen des elektronischen Rechtsverkehrs und über das besondere elektronische Behördenpostfach (Elektronischer-Rechtsverkehr-Verordnung – ERVV) in der jeweils geltenden Fassung sowie auf die Internetseite www.justiz.de verwiesen.

| Dr. Buchholz | Agger | Mundhenk |
|---|---|---|
| Vorsitzender Richter am Oberlandesgericht | Richterin am Oberlandesgericht | Richter am Landgericht |

Für die Richtigkeit der Abschrift
Hamburg, 24.05.2019

Ludwig, JAng
Urkundsbeamtin der Geschäftsstelle
Durch maschinelle Bearbeitung beglaubigt
- ohne Unterschrift gültig

Hanseatisches Oberlandesgericht Hamburg 16

Stefanie Weeber
Rosenstraße 3
67609
Heiligenmoschel
Tel. 06363 - 99 42